IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PIERRE DEPREE HUSBAND,

                                             OPINION and ORDER

                Plaintiff,

                                             07-cv-391-bbc

    v.

ANN TURNER and
DOROTHY DOHENY,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a civil action for monetary relief, brought pursuant to 42 U.S.C. § 1983. Plaintiff Pierre Depree Husband contends that defendants Ann Turner and Dorothy Doheny, City of Madison police officers, violated his Fifth Amendment rights by failing to give him a <u>Miranda</u> warning before interrogating him at school. I find that because plaintiff was "in custody" when defendants questioned him in a room near the school administrative offices, defendants violated plaintiff's Fifth Amendment rights when they failed to read him his <u>Miranda</u> rights. However, defendants are shielded from liability under the doctrine of qualified immunity because reasonable officers would not have known that their failure to give a <u>Miranda</u> warning in a school setting violated plaintiff's Fifth Amendment rights.

1

Therefore, plaintiff's motion for summary judgment will be denied and defendants' cross-motion for summary judgment will be granted.

I find that the following facts are material and undisputed.

UNDISPUTED FACTS

At all times relevant to plaintiff's claim, defendants Ann Turner and Dorothy Doheny were police detectives for the City of Madison. On April 10, 2002, defendant Ann Turner told plaintiff's mother that Turner was interested in talking to plaintiff about allegations that plaintiff had sexually assaulted a minor. Plaintiff's mother gave defendant Turner permission to interview plaintiff at school.

On April 12, 2002, defendants interrogated plaintiff at James Madison Memorial High School in a room near the eleventh grade administrative offices. Two school security guards escorted plaintiff from class to the room. Initially an assistant principal was present but he left the room as the interview began, leaving only plaintiff and defendants in the room. Defendants were dressed in plain clothes and identified themselves as detectives by showing their badges and identification. The interview lasted forty-five minutes. At no time during the interview did defendants tell plaintiff that he was free to leave or that he was not required to answer defendants' questions. Defendants did not inform plaintiff that he was under arrest or give him a <u>Miranda</u> warning.

When defendants asked plaintiff whether he knew why he was being interviewed, plaintiff answered that he understood that defendants wanted to know whether plaintiff had ever touched the minor victim inappropriately. After initially denying that he had touched the minor victim in a sexually inappropriate way, plaintiff eventually admitted having sexual contact with the minor victim. At one point in the interrogation, plaintiff said, "I don't want to go to jail." In response, defendant Turner said that she had no intention of taking plaintiff to jail that day and that plaintiff would be able to walk out of school and go to work that night. Plaintiff's admission came immediately after he was told that he would not be taken to jail that day. After the interview, plaintiff was permitted to leave school.

Plaintiff was later charged with first degree sexual assault of a child. On October 7, 2002, during plaintiff's criminal trial, Dane County Circuit Judge David Flanagan granted plaintiff's motion to suppress his statements made during the school interrogation. In suppressing plaintiff's admission, Judge Flanagan concluded that the interrogation was custodial and thus a <u>Miranda</u> warning was required. Judge Flanagan noted that the question whether the interrogation was custodial was "a very close case, one decided by the burden of proof." On November 14, 2002, Judge Flanagan accepted a no contest plea from plaintiff and found him guilty of the sexual assault charge. Judge Flanagan withheld plaintiff's sentence and ordered probation. On or about January 7, 2007, Judge Flanagan revoked plaintiff's probation and sentenced him to prison. Plaintiff's sentence has not been reversed

3

or otherwise invalidated.

OPINION

A. Heck Doctrine

Defendants argue that Heck v. Humphrey, 512 U.S. 477, bars plaintiff's § 1983 claim because his criminal conviction has not been overturned. According to Heck, a § 1983 claim for damages is not cognizable if a judgment in favor of the plaintiff "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." Id. at 487. The rule from Heck does not apply here. Although plaintiff was convicted of a crime related to his § 1983 claim, plaintiff's confession was suppressed from his criminal case. Plaintiff was convicted and sentenced independently of that confession based on his no contest plea after the suppression motion was granted. Thus, a judgment in favor of plaintiff would not "necessarily imply the invalidity" of plaintiff's conviction. Accordingly, the Heck doctrine does not bar plaintiff's § 1983 claim.

B. Custodial Interrogation

Consistent with the Fifth Amendment's prohibition of self-incrimination, the United States Supreme Court has ruled that suspects may not be subjected to "custodial interrogations" unless they have been informed of their so-called Miranda rights. Miranda

4

v. Arizona, 384 U.S. 436, 478-79 (1966); Dickerson v. United States, 530 U.S. 428, 444 (2000) (stating that Miranda announced a "constitutional rule").  Suspects in police custody must be advised prior to questioning of their right to remain silent, that anything they say may be used against them in court and that they are entitled to the presence of an attorney at the interrogation.  Miranda, 384 U.S. at 444.  "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in a significant way."  Id.

In determining whether a person is "in custody," the question is whether, examining the totality of the circumstances, a reasonable person in plaintiff's position would have felt "at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995).  In making this determination, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."  Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  The Court made it clear that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994).  Thus, individual characteristics of the person being questioned do not factor into the "custody" analysis.  Yarborough v. Alvarado, 541 U.S. 652, 667-68 (2004) (such subjective considerations would require police officers to "anticipat[e] the frailties or idiosyncracies of every person whom they question").

5

Because defendants were not parties to the criminal proceedings and because their interests in this case are not sufficiently identical to the prosecution's interest in the state criminal case, I am not bound by the state court's determination that defendants' interview of plaintiff at school was a custodial interrogation. Loeb Industries, Inc. v. Sumitomo Corp., 306 F.3d 469, 496 (7th Cir. 2002) (issue preclusion requires that opposing party was "fully represented in the prior litigation"); Paige K.B. v. Stevens G.B., 226 Wis. 2d 210, 226, 594 N.W.2d 370 (1999) ("nonparties cannot be bound by a prior litigation unless their interests are deemed to have been litigated"); Conner v. Reinhard, 847 F.2d 384, 394-96 (no privity between government and its officials when officials are sued in personal capacities). No Seventh Circuit or United States Supreme Court case holds precisely whether a police interview of a juvenile at school is custodial and therefore subject to Miranda. Consideration of the factors identified by the Supreme Court in Yarborough as important to the "custody" inquiry leads me to believe that defendants' interview of plaintiff at school was a custodial interrogation.

Certain facts weigh against a finding that plaintiff was in custody. Defendants had notified plaintiff's mother that the interrogation would be conducted, defendants did not suggest to plaintiff that he was or would be placed under arrest, and plaintiff was permitted to leave at the end of the interrogation. Such objective facts are consistent with an environment in which a reasonable person would have felt free to leave. Yarborough, 541

6

U.S. at 664-665.

However, other facts weigh more heavily in favor of a finding that plaintiff was in custody. Plaintiff was escorted to the interrogation by security guards and an assistant principal rather than arriving on his own accord; he was left alone in a closed room with defendants after they identified themselves as officers; and he was never told by defendants that he was free to refuse to answer defendants' questions and leave. Id. at 665. Further, the police interrogation took place in school. A student such as plaintiff summoned to the administrative offices of school for questioning would not feel free to leave regardless whether police officers or school personnel were conducting the questioning. Defendants contend that consideration of the fact that plaintiff is a high school student is inappropriate under Yarborough. I agree that consideration of a subjective factor such as age may be inappropriate in many interrogation situations, but defendants fail to recognize that when a court makes a custody determination it must ask "how a reasonable person *in the suspect's situation* would perceive his circumstances." Answering that question necessarily requires consideration of the context in qhich the interrogation took place, including plaintiff's status as a high-school student. Yarborough, 541 U.S. at 662 (citing Berkemer, 468 U.S. at 442) (emphasis added). A reasonable person in plaintiff's situation would be a student who was escorted by school personnel from class to a room near the school offices, left alone in the room with interrogating police officers and never informed that he was free to leave and not

7

answer questions.  That reasonable person would not feel that he was "at liberty to terminate the interrogation and leave."  Thompson, 516 U.S. at 112.  Accordingly, I conclude that the interrogation of plaintiff was "custodial" and that defendants should have given plaintiff a Miranda warning.

### C.  Qualified Immunity

Government officials performing discretionary functions enjoy qualified immunity from suit to the extent that their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638-39 (1987).  A two-step analysis is employed to determine whether a defendant is entitled to this defense.  Sornberger v. City of Knoxville, 434 F.3d 1006, 1013 (7th Cir. 2006).  The first step is determining whether a plaintiff has alleged a violation of a federal constitutional right.  Id. (citations omitted).  If such a violation did occur, the next step is determining whether the right was so clearly established at the time of the alleged violation that a reasonable officer would have known that his actions were unconstitutional.  Id. (citations omitted).  Having found that plaintiff was subjected to a custodial interrogation and was not informed of his Miranda rights, I move to the second step.

Defendants contend that plaintiff's right to a Miranda warning under the circumstances of the in-school interrogation was not so clear that reasonable officers would

8

have known that failure to give a Miranda warning would violate plaintiff's Fifth Amendment rights. Defendants are correct. No precedent addresses the custodial nature of school interrogations by police officers. Moreover, although no case on point is necessary where the constitutional violation is obvious, Hope v. Pelzer, 536 U.S. 730, 741 (2002), this is not such an obvious case. In the circumstances of plaintiff's interrogation, it was not so evident that a Miranda warning was required that defendants should have reasonably known that a lack of such a warning would violate plaintiff's constitutional rights. Accordingly, when defendants interrogated plaintiff on April 12, 2002, his right to a Miranda warning was not clearly established. Defendants are entitled to qualified immunity for their failure to give such a warning.

Moreover, although defendants do not raise this argument, it was not even clear in 2002 that a failure to give a Miranda warning was a violation of a constitutional right and not simply a ground for excluding evidence obtained from a suspect before the warning was given. At the time, no opinion from the Supreme Court or the Court of Appeals for the Seventh Circuit held that a failure to give a Miranda warning violated a person's constitutional rights. Thornton v. Buchmann, 392 F.2d 870, 874 (7th Cir. 1968). Indeed, courts in other circuits had explained that a failure to give a Miranda warning was not a constitutional violation. See Jones v. Cannon, 174 F.3d 1271, 1290-91 (11th Cir. 1999) ("failing to follow Miranda" does not create "a cause of action for money damages under

9

section 1983"); Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) ("violations of prophylactic Miranda procedures do not amount to violations of the Constitution itself"); Warren v. City of Lincoln, 864 F.2d 1436, 1442 (8th Cir. 1989) (remedy "for a Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action"); Bennett v. Passic, 545 F.2d 1260, 1263 (10th Cir. 1976); but see Cooper v. Dupnik, 963 F.2d 1220, 1237 (9th Cir. 1992) (recognizing claims under § 1983 arising from officers' intentional failure to give Miranda warnings).

Some courts have suggested that the Supreme Court repudiated this rationale in 2000 in Dickerson v. United States, 530 U.S. 428 (2000), in which the Court stated that Miranda announced a "constitutional rule." See, e.g., United States v. Faulkingham, 295 F.3d 85, 90 (1st Cir. 2001). However, Dickerson did not hold that a violation of Miranda is a violation of the Fifth Amendment. Dickerson, 530 U.S. at 442. The Court declined the invitation to "go farther than Miranda" and refused to say that "Miranda warnings are required by the Constitution." Id. Although characterizing Miranda as a "constitutional rule," the majority in Dickerson was careful not to say that Miranda is constitutionally required because several justices were "on record as believing that a violation of Miranda is *not* a violation of the Constitution." Id. at 445 (Scalia, J., dissenting).

In the absence of clear Supreme Court authority, a failure to give a Miranda warning was not clearly established as a constitutional violation until Sornberger, 434 F.3d 1006, was

10

decided in 2006. Sornberger held that if a suspect's statement were used against him in a "criminal case," a Miranda violation was actionable under § 1983 (and therefore a constitutional violation). Id. at 1024. Because it was not clearly established until 2006 that a failure to give a Miranda warning was a constitutional violation, defendants are entitled to qualified immunity for their failure to give plaintiff a Miranda warning on April 12, 2002.

ORDER

IT IS ORDERED that

1. Plaintiff Pierre Depree Husband's motion for summary judgment (dkt # 22) is DENIED; and

2. Defendants Ann Turner and Dorothy Doheny's cross-motion for summary judgment (dkt # 28) is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 5th day of May, 2008.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge